UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOLARINWA BOLUWATIFE SALAU, | |
| Petitioner, | CIVIL ACTION NO. 3:25-CV-02295 |
| v. | (MEHALCHICK, J.) |
| ANGELA HOOVER, et al., | |
| Respondents. | |

**MEMORANDUM**

Petitioner, Bolarinwa Boluwatife Salau[1] ("Salau"), a Nigerian national seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On December 1, 2025, Salau filed the instant petition, requesting that he be released from custody at the Clinton County Correctional Facility in McElhattan, Pennsylvania or that Respondents Angela Hoover, Immigration and Customs Enforcement ("ICE") Williamsport Sub Office, Pennsylvania Assistant Office Director Reid, and Amanda Campell[2] provide a bond hearing

---

[1] Petitioner's name was not clearly written on his petition, and his correct last name is Salau matching his identification number A-216-583-594. (Doc. 11, at 1 n.1).

[2] The government asserts that the only proper respondent in this case is Michael Kunes ("Kunes"), Warden of the Clinton County Correctional Facility. (Doc. 11, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Salau is detained at the Clinton County Correctional Facility, Kunes is the proper respondent. (Doc. 11, at 1 n.1); *see Rumsfeld*, 542 U.S. at 434. As such, all other respondents are **DISMISSED**. However, the government will be bound by the Court's judgment because Kunes is acting as an agent of the federal government by detaining Salau on behalf of ICE. *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of

pursuant to 8 U.S.C. § 1226. (Doc. 1). Salay filed a supplement to his petition for writ of habeas corpus on December 15, 2025, requesting immediate release from detention at the Clinton County Correctional Facility and an expedited hearing and summary order compelling his release. (Doc. 7). For the following reasons, Salau's petition (Doc. 1) is **DENIED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Salau's petition, the government's response, and the exhibits thereto. (Doc. 1, Doc. 11; Doc. 1-4; Doc. 1-6; Doc. 11-2). Salau is a Nigerian national who entered the United States on August 2, 2017 as an F-1, non-immigrant student. (Doc. 1, at 11; Doc. 11, at 2; Doc. 11-2, at 4). On February 8, 2018, Salau filed an I-589 Application for Asylum and for Withholding of Removal with the United States Citizenship and Immigration Services, which is pending. (Doc. 1-4; Doc. 11-2, at 4). On June 2, 2018, the Department of Homeland Security ("DHS") issued an I-862 Notice to Appear to Salau, which charged Salau with violating § 237(a)(1)(c)(i) of the Immigration and Nationality Act ("INA") for failure to attend classes at the University he was assigned to. (Doc. 1-4; Doc. 11-2, at 4). On December 18, 2023, an Immigration Judge ("IJ") dismissed the case due to prosecutorial discretion. (Doc. 11-2, at 5). On April 4, 2022, Salau filed an I-120 Application to Register Permanent Residence or Adjust Status, on April 4, 2022. (Doc. 1-4; Doc. 11-2, at 4). Salau has no claim to United States citizenship, and there are no known naturalization or derivation issues, so the Office of Citizenship and Immigration Services denied his application on April 12, 2024. (Doc. 1-4; Doc. 11-2, at 4).

---

release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025) (finding same).

On November 13, 2024, Salau was arrested for Identity Theft, in violation of 18 U.S.C. § 1028(a)(7) and 18 U.S.C. § 1028(b)(2)(B). (Doc. 11-2, at 13-14). Salau was sentenced in the Northern District of Virginia on September 8, 2025, to a 24-month sentence in the custody of the Federal Bureau of Prisons. (Doc. 11-2, at 6). Salau was credited for time served from November 13, 2024 to September 8, 2025. (Doc. 11, at 3). On October 29, 2025, ICE encountered Salau, pursuant to the Criminal Alien Program, while Salau was incarcerated by the Federal Bureau of Prisons at a correctional facility in White Deer, Pennsylvania, and ICE determined that Salau was an alien removable from the United States. (Doc. 1-4; Doc. 11-2, at 4). On November 10, 2025, DHS served Salau with an I-862 Notice to Appear indicating that Salau was subject to removal pursuant to § 237(a)(1)(C)(i) and § 237(a)(1)(B) of the INA for failing to comply with the conditions of his admission and for remaining in the United States for a time longer than permitted. (Doc. 11, at 4; Doc. 11-2, at 4, 6). On November 18, 2025, in a custody redetermination proceeding, an IJ found that Salau is a flight risk and that relief from removal is not apparent or documented and denied bond. (Doc. 1-6). On November 20, 2025, Salau was served by mail at the Clinton County Correctional Facility, with an I-261 Additional Charges of Inadmissibility/Deportability, which provides that Salau's F-1 student visa expired on or about June 7, 2019, his program at Georgia Southern University was scheduled to end on July 31, 2021, but Salau remained in the United States beyond both dates without authorization from DHS. (Doc. 11-5).

## II.  LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or

decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While habeas relief typically involves release from custody, courts may order alternative relief such as prohibitions on removal in immigration related habeas cases. *See J. G. G.*, 604 U.S. at 673 (finding that a noncitizen detained by ICE may challenge removal in a habeas petition). While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III. JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S.

4

500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Salau's petition is soundly before this Court, as Salau filed the instant petition while detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts that his continued detention violates due process.[3] *See J. G. G.*, 604 U.S. at 672 (acknowledging that immigration-related detainees' claims "fall within the 'core' of the writ of habeas corpus") (quoting *Nance*, 597 U.S. at 167); *see also Appiah v. Lowe*, No. 3:24-cv-2222, 2025 WL 510974, at *2 (M.D. Pa. Feb. 14, 2025).

## IV.  DISCUSSION

Salau requests that this Court release him from custody at the Clinton County Correctional Facility or that Kunes provide a bond hearing pursuant to 8 U.S.C. § 1226(a)(2). (Doc. 1). Salau contends that his continued detention at the Clinton County Correctional Facility without bond is in violation of the Immigration Nationality Act ("INA") and the Fifth Amendment of the United States Constitution. (Doc. 1, at 1). Salau avers that Kunes is improperly detaining him without bond pursuant to § 1226(c). (Doc. 1, at 1). Salau further avers that § 1226(c) is inapplicable to him, asserting that he is not a flight risk, violent or public threat, or danger to the community. (Doc. 1, at 3). The government counters that Salau's detention under § 1226 does not offend the due process clause of the Fifth Amendment because his detention has not been prolonged or arbitrary where he has received a custody redetermination hearing at which an IJ found that he is a flight risk and that relief from

---

[3] 8 U.S.C. § 1252 includes a jurisdictional bar prohibiting federal courts from reviewing orders of removal. 8 U.S.C. § 1252. The Court is not reviewing an order of removal, and as such, 8 U.S.C. § 1252 is no bar to this Court's jurisdiction.

removal is not apparent. (Doc. 11, at 5). The government asserts that ICE is lawfully detaining Salau without bond prior to his removal proceedings because Salau's criminal record places him within the ambit of § 1226(c). (Doc. 11, at 15).

The INA is a comprehensive statute regulating immigration, which has been repeatedly reworked by Congress since its enactment in 1952. *Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *1 (E.D. Pa. Nov. 14, 2025). Section 1226 of the INA provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226, the Attorney General may release a noncitizen on bond or conditional parole under certain conditions. 8 U.S.C. § 1226(a)(2). If a detained noncitizen is eligible for bond, "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At a bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

Section 1226 also provides that noncitizens previously convicted of certain criminal offenses are ineligible for release on bond and are subject to mandatory detention before their removal proceedings. 8 U.S.C. § 1226(c). A detained noncitizen that falls within § 1226(c) may be released only if the Attorney General decides that release is necessary to protect a witness and that the individual is not a flight risk and does not pose a danger to society. § 1226(c)(4); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473 (3d Cir. 2015) (citing *Demore v. Kim*, 538 U.S. 510, 521 (2003)). Included in the criminal offenses that render a

6

detained noncitizen ineligible for bond are crimes involving moral turpitude. § 1226(c)(A); 8 U.S.C. § 1182(a)(2)(i)(I). Crimes involving moral turpitude generally include fraud crimes such as identity theft. *Sasay v. Attorney General United States*, 13 F.4th 291, 298 (3d Cir. 2021) (finding noncitizen's prior conviction for aggravated identity theft qualified as a crime involving moral turpitude that rendered him removable from the United States under the INA); *Chiao Fang Ku v. Attorney General United States*, 912 F.3d 133, 143 (3d Cir. 2019) (citing *Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951)) ("Courts have long treated fraud crimes as 'involving moral turpitude'").

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, the Supreme Court has recognized that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore*, 538 U.S. at 523. Detention of noncitizens pending their removal proceedings serves the purpose of preventing noncitizens from fleeing before or during the removal proceedings. *Demore*, 538 U.S. at 528. However, the due process clause limits detention without a bond hearing to a "reasonable period." *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 208 (3d Cir. 2020). Therefore, due process affords noncitizens detained under § 1226(c) a bond hearing once their detention becomes unreasonable. *Santos*, 965 F.3d at 211.

To determine whether a noncitizen's detention has become unreasonable, courts evaluate four relevant factors. *Santos*, 965 F.3d at 211. First courts consider the duration of the noncitizen's detention. *Santos*, 965 F.3d at 210. Courts in the Third Circuit have found periods of detention that are just over a year in duration to be constitutional. *Mariazza-Chavez v. Doll*, No. 4:20-cv-1651, 2020 WL 7755438, at *4 (M.D. Pa. Dec. 1, 2020) (collecting cases) ("[T]his Court and other district courts in the Third Circuit have found that detention under Section 1226(c) for just over a year did not rise to the level of a due process violation."); *Crooks v. Lowe*, No. 1:18-CV-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (denying a bond hearing to a petitioner who had been detained for eighteen (18) months because "his case ha[d] proceeded through the removal process at a reasonable pace and there [was] no indication on the record that the government ha[d] improperly or unreasonably delayed the proceedings"); *Rosales v. Lowe*, No. 1:18-CV-1302, 2018 WL 6650304, at *3 (M.D. Pa. Dec. 19, 2018) (concluding that a petitioner who had been detained for less than fifteen (15) months was not entitled to a bond hearing); *Fernandez v. Lowe*, No. 3:17-CV-2301, 2018 WL 3584697, at *5 (M.D. Pa. July 26, 2018) (concluding that fifteen (15)-month detention was not unconstitutional because the alien's proceedings had "proceeded at a reasonable pace"). Second, courts consider whether the detention is likely to continue. *Santos*, 965 F.3d at 211. If the noncitizen's removal proceedings are unlikely to end soon, continued detention without a bond hearing may be unreasonable. *Santos*, 965 F.3d at 211. Third, courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay. *Santos*, 965 F.3d at 211. Fourth, courts examine whether the noncitizen's conditions of confinement are "meaningfully different" from criminal punishment. *Santos*, 965 F.3d at 211. If a noncitizen's civil detention under § 1226(c)

looks penal, "that shifts the scale toward finding the detention unreasonable. *Santos*, 965 F.3d at 211.

Here, Salau is properly detained under § 1226(c). Salau has a prior conviction of identity theft in violation of 18 U.S.C. § 1028(a)(7) and 18 U.S.C. § 1028(b)(2)(B). (Doc. 11-2, at 33-38). As a crime involving fraud, identity theft is considered a crime of moral turpitude. *Chiao Fang Ku*, 912 F.3d at 143 (citing *Jordan*, 341 U.S. at 232) ("Courts have long treated fraud crimes as 'involving moral turpitude'"); *Sasay*, 13 F.4th at 298 (finding noncitizen's prior conviction for aggravated identity theft qualified as a crime involving moral turpitude that rendered him removable from the United States under the INA). Accordingly, Salau falls within § 1226(c), as a noncitizen who is inadmissible by reason of having committed identity theft, a crime of moral turpitude. *See* § 1226(c), *see* 8 U.S.C. § 1182(a)(2)(i)(I).

Applying the factors set forth in *Santos*, Salau's detention pursuant to § 1226(c) without bond has not become unreasonable and does not violate due process. First, looking at the duration of Salau's detention, ICE obtained custody of Salau pursuant to § 1226(c) on or about November 7, 2025, and Salau has been detained for approximately two months. (Doc. 11, at 13). In considering the constitutionality of mandatory detention under § 1226(c), courts have found periods of detention much longer than Petitioner's to be constitutional. *See Mariazza-Chavez*, 2020 WL 7755438, at *4 (collecting cases) ("[T]his Court and other district courts in the Third Circuit have found that detention under Section 1226(c) for just over a year did not rise to the level of a due process violation."); *see Crooks*, 2018 WL 6649945, at *2 (denying a bond hearing to a petitioner who had been detained for eighteen (18) months because "his case ha[d] proceeded through the removal process at a reasonable pace and there [was] no indication on the record that the government ha[d] improperly or unreasonably

9

delayed the proceedings"); see Rosales, 2018 WL 6650304, at *3 (concluding that a petitioner who had been detained for less than fifteen (15) months was not entitled to a bond hearing); see Fernandez, 2018 WL 3584697, at *5 (concluding that fifteen (15)-month detention was not unconstitutional because the alien's proceedings had "proceeded at a reasonable pace"). Accordingly, Salau's two-month detention weighs in favor of a finding of reasonableness.

Looking at the second *Santos* factor, whether detention is likely to continue, Salau's proceedings are likely to be resolved in a relatively short period of time because his next hearing is scheduled for January 6, 2025. (Doc. 11-6); *Santos*, 965 F.3d at 211(finding if a noncitizen's removal proceeding is likely to end soon, continued detention is more likely to be reasonable). Accordingly, the second *Santos* factor weighs in favor of a finding of reasonableness. Looking at the third *Santos* factor, reasons for the delay, Salau's immigration proceedings have moved forward at a normal rate, without delay on behalf of Salau or the government. (Doc. 11, at 18). Salau has provided no evidence of bad faith errors by the government causing unnecessary delay. (*See* Doc. 1; *see* Doc. 7); *Santos*, 965 F.3d at 211 (finding courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay). Accordingly, the third *Santos* factor weighs in favor of a finding of reasonableness.

Looking at the fourth and final *Santos* factor, the conditions of the confinement, Salau's conditions of confinement reflect criminal punishment. Salau detention at the Clinton County Correctional Facility alongside convicted criminals is not meaningfully different from criminal punishment. (Doc. 1, at 3); *Santos*, 965 F.3d at 211 (finding that despite its civil label, petitioner's detention was indistinguishable from criminal punishment when petitioner was detained with convicted criminals and was confined to his cell for 23 hours a day).

Accordingly, the fourth Santos factor weighs in favor of a finding of reasonableness. *See Santos*, 965 F.3d at 211 (finding if a noncitizens civil detention under § 1226(c) looks penal, "that shifts the scale toward finding the detention unreasonable"). Taking the four *Santos* factors together, Salau's mandatory detention pursuant to § 1226(c) is reasonable and does not violate due process. Therefore, Salau's petition for writ of habeas corpus (Doc. 1) is **DENIED**.[4]

V.   **CONCLUSION**

For the foregoing reasons, Salau's petition for writ of habeas corpus (Doc. 1) is **DENIED**. An appropriate Order follows.

**BY THE COURT:**

**Dated: January 7, 2026**

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[4] Salau filed a petition for a temporary restraining order ("TRO") on December 2, 2025, requesting the Court to enjoin ICE agents from transferring Salau from the Clinton County Correctional Facility during the pendency of this habeas proceeding. (Doc. 3). On December 22, 2025, the Court ordered the Kunes to not transfer Salau without further order of the Court. (Doc. 9, at 2). As Salau's petition for writ of habeas corpus is **DENIED** (Doc. 1), the habeas proceeding is no longer ongoing, and Salau's TRO is likewise **DENIED**. (Doc. 3).

11